# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMCO INSURANCE COMPANY, | CASE NO. CV F 08-1684 LJO GSA |
| Plaintiff, | **ORDER ON DEFENDANT'S F.R.Civ.P. 12(b)(1) MOTION TO DISMISS** |
| vs. | (Docs. 18, 19.) |
| ABBY FARMS, INC., | |
| Defendant. | |

## INTRODUCTION

Defendant Abby Farms, Inc. ("Abby") seeks to dismiss this insurance coverage action on grounds that plaintiff Amco Insurance Company ("Amco") conducts sufficient California business to defeat 28 U.S.C. § 1332 diversity jurisdiction. Amco responds that its "total range of business activities" demonstrates that Iowa is its principal place of business to invoke diversity jurisdiction. This Court considered Abby's F.R.Civ.P. 12(b)(1) motion on the record[1] and VACATES the June 3, 2009 hearing, pursuant to Local Rule 78-230(h). For the reasons discussed below, this Court DENIES dismissal of this action.

---

[1] Abby filed no timely reply papers.

1

# BACKGROUND

## Amco's Policy And Abby's Claim

Amco's operative complaint ("complaint") alleges that Amco, an insurer, is an Iowa corporation "with its principle [sic] place of business in Des Moines, Iowa." Abby, a California corporation, operates a Farmersville grocery and does business as Mercardo del Valle. Amco issued a Premier Businessowners Policy ("policy") to Abby. On April 10, 2007, when the policy was in effect, a fire caused substantial damage to the interior of Abby's grocery and destroyed grocery equipment and contents. Amco's investigator concluded that the fire was arson caused.

Abby submitted to Amco a nearly $325,000 claim for loss of income/profit and loss of business personal property. Amco determined that the claim was "grossly inflated" and that the arson fire was set by Abby officers or management employees.

## Amco's Declaratory Relief And Diversity Claims

On November 4, 2008, Amco filed its complaint to seek declaratory relief that Amco owes no coverage to Abby for the fire and that the policy is "null and void due to intentional misrepresentations and concealment of material fact facts by defendant and/or dishonest acts by defendant in intentionally setting the fire." Amco seeks an alternative declaration of the amount of damages to be recovered under the policy, if this Court finds coverage under the policy.

As to subject matter jurisdiction, the complaint alleges: "Jurisdiction of this action is founded upon 28 U.S.C. § 1332, as the parties are citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, further Declaratory Relief is authorized by 28 U.S.C.A. § 2201 to resolve coverage disputes."

# DISCUSSION

## F.R.Civ.P. 12(b)(1) Motion Standards

Abby challenges diversity jurisdiction on grounds that California is Amco's "principal place of business" in that 44 percent of Amco's 2008 premiums were from California and only six percent of its 2008 premiums were from Iowa. Amco directs this Court to evaluate Amco's premiums and losses in California on a per capita basis.

F.R.Civ.P. 12(b)(1) authorizes a motion to dismiss for lack of subject matter jurisdiction.

Fundamentally, federal courts are of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377, 114 S.Ct. 341 (1994). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes*, 873 F. 2d 1221, 1225 (9th Cir. 1989). Limits on federal jurisdiction must neither be disregarded nor evaded. *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374, 98 S.Ct. 2396 (1978). A plaintiff bears the burden to establish that subject matter jurisdiction is proper. *Kokkonen*, 511 U.S. at 377, 98 S.Ct. 2396.

A defendant may attack the existence of subject matter jurisdiction apart from the pleadings. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3rd Cir. 1977). In such a case, a court may rely on evidence extrinsic to the pleadings and resolve factual disputes relating to jurisdiction. *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir.), *cert. denied*, 493 U.S. 993, 110 S.Ct. 541 (1989); *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987); *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983).

"The plaintiff always bears the burden of establishing subject matter jurisdiction. In effect, the court presumes lack of jurisdiction until the plaintiff proves otherwise." *Valdez v. U.S.*, 837 F.Supp. 1065, 1067 (E.D. Cal. 1993). "[T]he burden of proof is on the plaintiff to support allegations of jurisdiction with competent proof when the allegations are challenged by the defendant." *O'Toole v. Arlington Trust Co.*, 681 F.2d 94, 98 (1st Cir. 1982).

With these standards in mind, this Court turns to the issue of diversity between Amco and Abby.

## **Diversity Of Citizenship**

28 U.S.C. § 1332(a) establishes diversity of citizenship jurisdiction and provides in pertinent part:

> The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between –
>
> (1) citizens of different States . . .

Under 28 U.S.C. § 1332(a)(1), there is diversity of citizenship if the plaintiff is a "citizen" of a different state than all of the defendants. *Lundquist v. Precision Valley Aviation, Inc.*, 946 F.2d 8, 10 (1st Cir. 1991); *Sweeney v. Westvaco Co.*, 926 F.2d 29, 32-33, 41 (1st Cir. 1991). "Citizenship" in a state is the equivalent of "domicile." *Lundquist*, 946 F.2d at 10; *Valedon Martinez v. Hospital Presbiteriano del*

*la Comunidad, Inc.*, 806 F.2d 1128, 1132 (1st Cir. 1986).

"[T]he jurisdiction of the court depends upon the state of things at the time of the action brought." *Mollan v. Torrance*, 9 Wheat. 537, 539, 6 L.Ed. 154 (1824). A party's citizenship for diversity purposes is assessed "at the time the complaint was first filed." *LeBlanc v. Cleveland*, 248 F.3d 95, 100 (2nd Cir. 2001). "[H]ow diverse parties must be" and "where each party lives" will be determined "at the time of filing of the relevant complaint." *E.R. Squibb & Sons, Inc. v. Lloyd's & Co.*, 241 F.3d 154, 163-164 (2nd Cir. 2001).

### Ms. Horvath's Declaration

The gist of Abby's jurisdictional challenge is that Amco should be treated as a California citizen in that it generates far more premiums from California than any other state. Abby relies on a declaration filed in a Central District of California federal action of Pamela Horvath ("Ms. Horvath"), an Amco director of STAT reporting and analysis. In her February 23, 2009 declaration, Ms. Horvath stated that Amco "had direct premium revenues within the State of California from 2007 in the sum of $605,527,742, which was 41% of its total direct premium revenue in 2007. In 2008, [Amco] had direct premium revenues within the State of California in the sum of $650,916,332, which was 44% of its total direct premium revenue in 2008." Ms. Horvath further declared that Iowa follows California in direct premium revenues with $93,529,294 in 2007 and $89,889,161 in 2008.

Based on Ms. Horvath's declaration, Abby surmises that Amco has in California, compared to other states, more insureds, insured property, agents, brokers, adjusting, claims, investigation and litigation. Abby concludes that "Amco appears to maintain such a large presence in California that it is unlikely to be considered an 'outsider' that would suffer prejudice if this dispute was decided in a California state court."

Amco responds that after considering Ms. Horvath's declaration, the Central District court did not find that diversity was lacking and that Amco had "shown jurisdiction is proper."

### Public Policies

To support dismissal of Amco's action, Abby points to several public policies noted in *Ghaderi v. United Airlines, Inc.*, 136 F.Supp.2d 1041, 1043 (N.D. Cal. 2001):

• Public policy favors allowing state courts to adjudicate state law claims: The diversity

4

statute is to be strictly construed against intruding on the rights of the states to decide their own controversies.

• Public policy favors reducing the federal courts' diversity case load in favor of allowing states to resolve their controversies when it is appropriate to do so: Federal courts are courts of limited jurisdiction. . . .

• The primary purpose of the diversity statute is to avoid prejudice against "outsiders." Parties who have a great deal of contact with the public in a particular state are not likely to be considered outsiders and, therefore, are not likely to be victims of discrimination by "locals."

• Public policy favors avoiding waste of both litigants' and judicial resources: If the parties were to proceed through trial in this court after an erroneous finding that the court has diversity jurisdiction the resources devoted to the litigation by the parties and the court would have been wasted. The federal judgment would be invalid, and the parties would have to relitigate in state court. In contrast, if the court erroneously remands to state court, a state court will resolve plaintiff's state law claims in a forum in which [the corporate party] maintains a substantial presence. Little, if any, harm will follow.

With these policies in mind, this Court addresses tests to determine a corporation's state of citizenship for diversity purposes.

### **Tests For Corporate Citizenship**

#### *Place Of Operations*

"A corporation is a citizen of the state in which it is incorporated and the state that is its principal place of business." *Ghaderi*, 136 F.Supp.2d at 1042, n. 1; *see* 28 U.S.C. § 1332(c)(1). Federal courts primarily use the "place of operations test" to determine a corporation's "'principal place of business,' i.e., its place of corporate citizenship." *Ghaderi*, 136 F.Supp.2d at 1044. The "place of operations" test "locates a corporation's principal place of business in the state which 'contains a substantial predominance of corporate operations.'" *Tosco Corp. v. Communities for Better Environment*, 236 F.3d 495, 500 (9th Cir. 2001) (quoting *Industrial Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990)). A state that "substantially predominates" is a corporation's principal place of business. *Ghaderi*, 136 F.Supp.2d at 1044.

The alternative "nerve center" test "locates a corporation's principal place of business in the state where the majority of its executive and administrative functions are performed." *Tosco*, 236 F.3d at 500. As further explained in *Tosco*, 236 F.3d at 500:

> The Ninth Circuit Court of Appeals has given lower courts direction to determine which of these tests to apply: where a majority of a corporation's business activity takes place in one state, that state is the corporation's principal place of business, even if the

corporate headquarters are located in a different state. The "nerve center" test should be used only when no state contains a substantial predominance of the corporation's business activities. *Industrial Tectonics, Inc. v. Aero Alloy*, 912 F.2d at 1094 (emphasis added). Thus, the Ninth Circuit applies the place of operations test unless the plaintiff shows that its activities do not substantially predominate in any one state.

### *Substantial Predominance*

"[D]etermining whether a corporation's business activity substantially predominates in a given state plainly requires a comparison of that corporation's business activity in the state at issue to its business activity in other individual states." *Tosco*, 236 F.3d at 500. "Thus, 'substantial predominance' does not require the majority of a corporation's total business activity to be located in one state, but instead, requires only that the amount of corporation's business activity in one state be significantly larger than any other state in which the corporation conducts business." *Tosco*, 236 F.3d at 500.

Factors to determine whether a state has substantial predominance of corporate activity include the location of: (1) employees; (2) tangible property; (3) production activities; (4) sources of income; and (5) where sales and purchases take place. *Tosco*, 236 F.3d at 500; *Industrial Tectonics*, 912 F.2d at 1094. A "corporation usually has its greatest contacts with the public where it conducts most of its business, rather than where internal policy decisions are made." *Industrial Tectonics*, 912 F.2d at 1094. "This local contact alleviates problems with local prejudice against outsiders and justifies consideration of the corporation as a citizen of that state." *Industrial Tectonics*, 912 F.2d at 1094. "Thus, the principal place of business should be the place where the corporation conducts the most activity that is visible and impacts the public, so that it is least likely to suffer from prejudice against outsiders." *Industrial Tectonics*, 912 F.2d at 1094.

Moreover, "[d]eeming a corporation a citizen of the state with which it has the most public contact and, therefore, the 'greatest potential for litigation,' helps reduce the federal court diversity case load." *Ghaderi*, 136 F.Supp.2d at 1044 (quoting *Industrial Tectonics*, 912 F.2d 1090). When "a party has substantial contact with the public, the public is not likely to view it as an 'outsider' and not likely to discriminate on the basis of citizenship." *Ghaderi*, 136 F.Supp.2d at 1044.

The "law clearly places the burden of persuasion on these issues on the party seeking to invoke the court's diversity jurisdiction." *Ghaderi*, 136 F.Supp.2d at 1045. A corporation seeking to invoke diversity jurisdiction in a California federal court must demonstrate "that California does not contain

substantial predominance of its business activity. In considering the evidence, doubts must be resolved" against the corporation. *Ghaderi*, 136 F.Supp.2d at 1045.

**Employees And Property**

Abby argues that Amco "need not conduct a frank majority . . . 51%, of its business activity in California" to be a California citizen in that a "significantly larger" amount of Amco's business is conducted in California than elsewhere. Abby concludes that the diversity statute "is not sufficiently implicated to justify litigation of this case in federal court, if the amount of business Amco conducts in California is so large, relative to other states, that there is little danger it will be prejudiced as an outsider."

Abby relies on Ms. Horvath's declaration that 44 percent of Amco's 2008 direct premium revenues were derived from California and that Iowa ranks second to California by generating 6 percent of Amco's direct premium revenues. Abby surmises that since "Amco produces such predominant direct premium income in California," Amco "has far more insureds, and far more insured property, in California than in any other single state" to require "far more agents and brokers" in California than elsewhere. Abby estimates that Amco requires nearly half of its adjusters, claims handlers and investigators in California. Amco further surmises that "[f]ar more Amco policy and claims litigation could also be expected to occur in California than in any other single state."

Amco responds that application of relevant factors demonstrates that "the substantial predominance of the business activities of AMCO occurs in Iowa." In her declaration, Rae Ann Dankovic, Amco's Vice President-Associate General Counsel and Assistant Secretary, notes that:

1. "[S]ubstantially all corporate and general administration operations are performed by AMCO at its principal place of business in Iowa";

2. Amco has 39 elected officers and five directors and the "majority of the officers and directors are located in Iowa and Ohio"; and

3. Only one officer and director has a California office.

Amco's Human Resources Director Cheryl Bryant ("Ms. Bryant") declares that Amco "has no employees" in California and that all personnel which support Amco policies and claims are employed by Nationwide Mutual Company ("Nationwide"). Ms. Bryant explains that approximately 3,000

Nationwide employees who support Amco are located in Iowa compared to 800 such employees in California, 458 in Denver, 441 in Lincoln, Nebraska, and 400 in Gainsville, Florida. Amco concludes that "the majority of employees supporting AMCO's insurance business are found in Iowa."

As to office space, Roy Kunkle, Nationwide vice president of corporate real estate, declares that Amco "does not own or lease office space" in California and that the majority of Amco's "corporate occupied office space, either owned or leased, is located in Iowa."

Amco demonstrates that the majority of its officers, directors and employees are located outside California and that Iowa substantially predominates as the location of Amco's officers, directors and employees. Abby fails to support its notion that Amco requires more employees in California than elsewhere. Moreover, Amco demonstrates the absence of Amco's office space in California to support Iowa as substantial predominance of Amco's business activity.

## **Premiums And Losses**

Amco acknowledges that it received from California 41 percent of its 2007 direct premium revenue and 44 percent of its 2008 direct premium revenue. In her declaration filed in this action, Ms. Horvath notes that Amco paid 38 percent of its 2007 and 2008 direct losses in California. Amco urges that "premiums earned and losses paid should be adjusted to reflect the differences in population between California – by far the most populated state in the Union – and other states for purposes of determining the location of a corporation's principal place of business." "Because California is the state with the largest population, business activity on a national scale can be expected to be greater in California." *Arellano v. Home Depot USA, Inc.*, 245 F.Supp.2d 1102, 1107 (S.D. Cal. 2003).

Amco recommends that "a more accurate measure would be per capita revenue based on state population." *See Albine v. Standard Ins. Co.*, 349 F.Supp.2d 1334, 1338 (C.D. Cal. 2004) ("Although California contains more than twice the premium revenues of Oregon, it also has nearly ten times the population. Thus, in per capita terms, California is actually a less significant source of revenue for Defendant.")

Amco notes that it generates premium revenue from 32 states. Amco points out that its top 2008 direct premiums per capita are Iowa ($29.94), California ($17.70) and Arizona ($9.18). According to Amco, its top 2008 direct losses paid per capita are Iowa ($21.11), Kansas ($19.61), and California

($9.30). Amco concludes that under a per capita analysis, Iowa predominates in Amco premiums and direct losses paid to render Iowa "the center of all other activities of AMCO under the 'total activities' test."

Amco persuasively demonstrates that California's gross premium revenues and direct paid losses should not be considered alone and without evaluation of per capita figures. The per capita figures demonstrate that Amco is a relatively bigger insurance player in Iowa than it is in California in that Amco collects and pays more per capita in Iowa than in California. Abby relies on looking at premiums in a vacuum without consideration of California's large population and fails to challenge Amco's per capita analysis.

Evaluation of the pertinent factors reveals that Iowa has a substantial predominance of Amco's corporate activity. No public policy warrants dismissal of this action.

## Nerve Center

Amco further argues that under the alternative nerve center test, Iowa is its principal place of business in that:

1. The "majority of executive and administrative functions of AMCO occur in Iowa";
2. The "great majority of officers and directors of AMCO are located in Iowa or Ohio";
3. "[A]ll board meetings and elections of officers and directors of AMCO are held in Iowa or Ohio"; and
4. The "majority of AMCO's support personnel are located in Iowa."

Amco concludes that Iowa is its headquarters and "nerve center."

Without meaningful challenge from Abby, Amco demonstrates that Iowa is its principal place of business under the nerve center test as well.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court DENIES Abby's F.R.Civ.P. 12(b)(1) motion to dismiss.

IT IS SO ORDERED.

**Dated:   May 28, 2009**               /s/ Lawrence J. O'Neill
                                        UNITED STATES DISTRICT JUDGE